I concur in judgment, but only because this Court's hands have been tied by recent amendments to R.C. 4151.414. Prior to the March 1999 addition of R.C. 2151.414(B)(1)(d), the state could not permanently terminate parental rights unless it proved, by clear and convincing evidence, (1) that the parent was unfit in some way and (2) that permanent custody was in the child's best interest. With the recent addition of subsection (B)(1)(d), however, the state is able to satisfy its burden of proving parental unfitness simply by establishing that the child has remained in the temporary custody of the agency for more than a year.
In an effort to prevent dependent and neglected children from lingering in the foster care system indefinitely, the legislature imposed a twelve-month time limit on reunification that has obviated the state's need to prove parental unfitness before permanently terminating parental rights. Instead, courts are apparently to presume the unfitness of a parent because her child has been in the temporary custody of a children services agency for more than twelve months of a twenty-two month period. And, even worse, R.C. 2151.414 provides no mechanism for a parent to rebut this presumption. If the child has remained in temporary custody for the requisite period, the state has satisfied what was once the "unfitness" prong of the permanent custody test. Because the state is no longer required to present such evidence, the circumstances surrounding that period of temporary custody are not necessarily revealed at the permanent custody hearing, as they were not here. A child may have remained in the temporary custody of the agency for a variety of reasons, including that the parent was making great progress toward reunification.
I am very uncomfortable with this presumption of parental unfitness. In Stanley v. Illinois (1972), 405 U.S. 645, 657-658, 31 L.Ed.2d 551,562-563, the United States Supreme Court held that the state may not presume the unfitness of a father simply because he is not married to the child's mother, but must provide the opportunity for an individualized determination of parental fitness. "Procedure by presumption is always cheaper and easier than individualized determination," the Court noted, but it stressed the potential for such a presumption to result in wrongful terminations. Id. at 656-657, 31 L.Ed.2d at 562. The Stanley
court explained that, even though the presumption may prove true in many cases (that most unmarried fathers are unsuitable or neglectful), it will not be true in all cases (some unmarried fathers are wholly suited to raise their children). See id. at 654, 31 L.Ed.2d at 560.
That same reasoning can apply to R.C. 2151.414(B)(1)(d). While it may be true in many cases that the child has remained in the temporary custody of the agency for more than twelve months because the parent is unfit, that will not always be the case. Without adequate procedural safeguards in place, however, this Court has no way of knowing what the circumstances are in a given case. "[T]he State registers no gain towards its declared goals when it separates children from the custody of fit parents." Id. at 652, 31 L.Ed.2d at 559. Not only are the rights of the parent at stake, but the rights of the child as a part of that family are also at stake.
The United States Supreme Court later stressed in Santosky v. Kramer
(1982), 455 U.S. 745, 753-754, 71 L.Ed.2d 599, 606-607:
 The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.
 I do not believe that the current statutory scheme adequately protects the rights of the parents and, as a result, the rights of their children. I am bound to follow the law, however, and because no challenge has been raised to this aspect of R.C. 2151.414, I concur with the majority.
R.C. 2151.413(D)(1) and R.C. 2151.413(D)(3)(a) essentially require the agency to move for permanent custody unless it can document "a compelling reason that permanent custody is not in the best interest of the child." Even though Ms. Bunting was given more than twelve months to achieve her goals, and the evidence suggests that she was making some progress, CSB apparently concluded that there was no "compelling" reason to postpone moving for permanent custody. Ms. Bunting's children will be ten and twelve years old in a few months and both have behavioral problems. It is unfortunate that the current statutory scheme pushes the agency to end a mother's relationship with her children, and theirs with her, even though there may be little hope of adoption for these children.